Justice Stevens,
dissenting.
Justice Souter's dissenting opinion, which I join in full, explains why our decision in Alexander v. Gardner-Denver Co., 415 U. S. 36 (1974), answers the question presented in this case. My concern regarding the Court’s subversion of precedent to the poliey favoring arbitration prompts these additional remarks.
Notwithstanding the absence of change in any relevant statutory provision, the Court has recently retreated from, and in some cases reversed, prior decisions based on its changed view of the merits of arbitration. Previously, the Court approached with caution questions involving a union’s waiver of an employee’s right to raise statutory claims in a federal judicial forum. After searching the text and purposes of Title VII of the Civil Rights Act of 1964, the Court in Gardner-Denver held that a clause of a collective-bargaining agreement (CBA) requiring arbitration of discrimination claims could not waive an employee’s right to a judicial forum for statutory claims. See 415 U. S., at 51. The Court’s decision rested on several features of the stat *275 ute, including the individual nature of the rights it confers, the broad remedial powers it grants federal courts, and its expressed preference for overlapping remedies. See id., at 44-48. The Court also noted the problem of entrusting a union with certain arbitration decisions given the potential conflict between the collective interest and the interests of an individual employee seeking to assert his rights. See id., at 58, n. 19. That concern later provided a basis for our decisions in Barrentine v. Arkansas-Best Freight System, Inc., 450 U. S. 728, 742 (1981), and McDonald v. West Branch, 466 U. S. 284, 291 (1984), which similarly held that a CBA may not commit enforcement of certain rights-creating statutes exclusively to a union-controlled arbitration process. Congress has taken no action signaling disagreement with those decisions.
The statutes construed by the Court in the foregoing cases and in Wilko v. Swan, 346 U. S. 427 (1953), have not since been amended in any relevant respect. But the Court has in a number of cases replaced our predecessors’ statutory analysis with judicial reasoning espousing a policy favoring arbitration and thereby reached divergent results. I dissented in those cases to express concern that my colleagues were making policy choices not made by Congress. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U. S. 614, 640 (1985); Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U. S. 477, 486 (1989); Gilmer v. Interstate/Johnson Lane Corp., 500 U. S. 20, 36 (1991); and Circuit City Stores, Inc. v. Adams, 532 U. S. 105, 124 (2001).
Today the majority’s preference for arbitration again leads it to disregard our precedent. Although it purports to ascertain the relationship between the Age Discrimination in Employment Act of 1967 (ADEA), the National Labor Relations Act, and the Federal Arbitration Act, the Court ignores our earlier determination of the relevant provisions’ meaning. The Court concludes that “[i]t was Congress’ verdict *276 that the benefits of organized labor outweigh the sacrifice of individual liberty” that the system of organized labor “necessarily demands,” even when the sacrifice demanded is a judicial forum for asserting an individual statutory right. Ante, at 271. But in Gardner-Denver we determined that “Congress’ verdict” was otherwise when we held that Title VII does not permit a CBA to waive an employee’s right to a federal judicial forum. Because the purposes and relevant provisions of Title VII and the ADEA are not meaningfully distinguishable, it is only by reexamining the statutory questions resolved in Gardner-Denver through the lens of the policy favoring arbitration that the majority now reaches a different result.*
Under the circumstances, I believe a passage from one of my earlier dissents merits repetition. The Court in Rodriguez de Quijos overruled our decision in Wilko and held that predispute agreements to arbitrate claims under the Securities Act of 1933 are enforceable. 490 U. S., at 484; see also id., at 481 (noting Wilko’s reliance on “the outmoded presumption of disfavoring arbitration proceedings”). I observed in dissent:
“In the final analysis, a Justice’s vote in a case like this depends more on his or her views about the respective lawmaking responsibilities of Congress and this Court than on conflicting policy interests. Judges who have confidence in their own ability to fashion public policy *277 are less hesitant to change the law than those of us who are inclined to give wide latitude to the views of the voters’ representatives on noneonstitutional matters. Cf. Boyle v. United Technologies Corp., 487 U. S. 500 (1988). As I pointed out years ago, Alberto-Culver Co. v. Scherk, 484 F. 2d 611, 615-620 (CA7 1973) (dissenting opinion), rev’d, 417 U. S. 506 (1974), there are valid policy and textual arguments on both sides regarding the interrelation of federal securities and arbitration Acts. None of these arguments, however, carries sufficient weight to tip the balance between judicial and legislative authority and overturn an interpretation of an Act of Congress that has been settled for many years.” Rodriguez de Quijas, 490 U. S., at 487 (footnote and citation omitted).
As was true in Rodriguez de Quijas, there are competing arguments in this case regarding the interaction of the relevant statutory provisions. But the Court in Gardner-Denver considered these arguments, including “the federal policy favoring arbitration of labor disputes,” 415 U. S., at 59, and held that Congress did not intend to permit the result petitioners seek. In the absence of an intervening amendment to the relevant statutory language, we are bound by that decision. It is for Congress, rather than this Court, to reassess the policy arguments favoring arbitration and revise the relevant provisions to reflect its views.
Justice Souter, with whom Justice Stevens, Justice Ginsburg, and Justice Breyer join, dissenting.
The issue here is whether employees subject to a collective-bargaining agreement (CBA) providing for conclusive arbitration of all grievances, including claimed breaches of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U. S. C. § 621 et seq., lose their statutory right to bring an ADE A claim in court, § 626(e). Under the 35-year-old holding in Alexander v. Gardner-Denver Co., 415 *278 U. S. 36 (1974), they do not, and I would adhere to stare decisis and so hold today.
I
Like Title VII of the Civil Rights Act of 1964, 42 U. S. C. §20Q0e et seq., the ADEA is aimed at “ 'the elimination of discrimination in the workplace,’ ” McKennon v. Nashville Banner Publishing Co., 513 U. S. 352, 358 (1995) (quoting Oscar Mayer & Co. v. Evans, 441 U. S. 750, 756 (1979)), and, again like Title VII, the ADEA “contains a vital element...: It grants an injured employee a right of action to obtain the authorized relief,” 513 U. S., at 358. “Any person aggrieved” under the ADEA “may bring a civil action in any court of competent jurisdiction for such legal or equitable relief,” 29 U. S. C. § 626(c), thereby “not only redressing] his own injury but also vindicating] the important congressional policy against discriminatory employment practices,” Gardner-Denver, supra, at 45.
Gardner-Denver considered the effect of a CBA’s arbitration clause on an employee’s right to sue under Title VII. One of the employer’s arguments was that the CBA entered into by the union had waived individual employees’ statutory cause of action subject to a judicial remedy for discrimination in violation of Title VII. Although Title VII, like the ADEA, “does not speak expressly to the relationship between federal courts and the grievance-arbitration machinery of collective-bargaining agreements,” 415 U. S., at 47, we unanimously held that “the rights conferred” by Title VII (with no exception for the right to a judicial forum) cannot be waived as “part of the collective bargaining process,” id., at 51. We stressed the contrast between two categories of rights in labor and employment law. There were “statutory rights related to collective activity,” which “are conferred on employees collectively to foster the processes of bargaining^ which] properly may be exercised or relinquished by the union as collective-bargaining agent to obtain economic benefits for union members.” Ibid. But “Title VII . . . stands *279 on plainly different [categorical] ground; it concerns not majoritarian processes, but an individual’s right to equal employment opportunities.” Ibid. Thus, as the Court previously realized, Gardner-Denver imposed a “seemingly absolute prohibition of union waiver of employees’ federal forum rights.” Wright v. Universal Maritime Service Corp., 525 U. S. 70, 80 (1998).[1]
We supported the judgment with several other lines of complementary reasoning. First, we explained that anti-discrimination statutes “have long evinced a general intent to accord parallel or overlapping remedies against discrimination,” and Title VII’s statutory scheme carried “no suggestion ... that a prior arbitral decision either forecloses an individual’s right to sue or divests federal courts of jurisdiction.” Gardner-Denver, 415 U. S., at 47. We accordingly concluded that “an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement.” Id., at 49.
Second, we rejected the District Court’s view that simply participating in the arbitration amounted to electing the arbitration remedy and waiving the plaintiff’s right to sue. We said that the arbitration agreement at issue covered only a contractual right under the CBA to be free from discrimination, not the “independent statutory rights accorded by Congress” in Title VII. Id., at 49-50. Third, we rebuffed the employer’s argument that federal courts should defer to arbitral rulings. We declined to make the “assumption that arbitral processes are commensurate with judicial processes,” id., at 56, and described arbitration as “a less appropriate forum for final resolution of Title VII issues than the federal courts,” id., at 58.
*280 Finally, we took note that “[i]n arbitration, as in the collective-bargaining process, the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit,” ibid., n. 19, a result we deemed unacceptable when it came to Title VII claims. In sum, Gardner-Denver held that an individual’s statutory right of freedom from discrimination and access to court for enforcement were beyond a union’s power to waive.
Our analysis of Title VII in Gardner-Denver is just as pertinent to the ADEA in this case. The “interpretation of Title VII . . . applies with equal force in the context of age discrimination, for the substantive provisions of the ADEA ‘were derived in haec verba from Title VII,’” and indeed neither petitioners nor the Court points to any relevant distinction between the two statutes. Trans World Airlines, Inc. v. Thurston, 469 U. S. 111, 121 (1985) (quoting Lorillard v. Pons, 434 U. S. 575, 584 (1978)); see also McKennon, 513 U. S., at 358 (“The ADEA and Title VII share common substantive features and also a common purpose”). Given the unquestionable applicability of the Gardner-Denver rule to this ADEA issue, the argument that its precedent be followed in this case of statutory interpretation is equally unquestionable. “Principles of stare decisis ... demand respect for precedent whether judicial methods of interpretation change or stay the same. Were that not so, those principles would fail to achieve the legal stability that they seek and upon which the rule of law depends.” CBOCS West, Inc. v. Humphries, 553 U. S. 442, 457 (2008). And “[considerations of stare decisis have special force” over an issue of statutory interpretation, which is unlike constitutional interpretation owing to the capacity of Congress to alter any reading we adopt simply by amending the statute. Patterson v. McLean Credit Union, 491 U. S. 164, 172-173 (1989). Once we have construed a statute, stability is the rule, and “we will not depart from [it] without some compelling justification.” Hilton v. South Carolina Public Railways *281 Comm’n, 502 U. S. 197, 202 (1991). There is no argument for abandoning precedent here, and Gardner-Denver controls.
II
The majority evades the precedent of Gardner-Denver as long as it can simply by ignoring it. The Court never mentions the case before concluding that the ADEA and the National Labor Relations Act, 29 U. S. C. § 151 et seq., “yiel[d] a straightforward answer to the question presented,” ante, at 260, that is, that unions can bargain away individual rights to a federal forum for antidiscrimination claims. If this were a case of first impression, it would at least be possible to consider that conclusion, but the issue is settled and the time is too late by 35 years to make the bald assertion that “[njothing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative,” ante, at 258. In fact, we recently and unanimously said that the principle that “federal forum rights cannot be waived in union-negotiated CBAs even if they can be waived in individually executed contracts . . . assuredly finds support in” our case law, Wright, supra, at 77, and every Court of Appeals save one has read our decisions as holding to this position, Air Line Pilots Assn., Int’l v. Northwest Airlines, Inc., 199 F. 3d 477, 484 (CADC 1999) (“We see a clear rule of law emerging from Gardner-Denver and Gilmer [v. Interstate/Johnson Lane Corp., 500 U. S. 20 (1991)]: ... an individual may prospectively waive his own statutory right to a judicial forum, but his union may not prospectively waive that right for him. All of the circuits to have considered the meaning of Gardner-Denver after Gilmer, other than the Fourth, are in accord with this view”).
Equally at odds with existing law is the majority’s statement that “[t]he decision to fashion a [CBA] to require arbitration of employment-discrimination claims is no different from the many other decisions made by parties in designing *282 grievance machinery.” Ante, at 256. That is simply impossible to square with our conclusion in Gardner-Denver that “Title VII... stands on plainly different ground” from “statutory rights related to collective activity”: “it concerns not majoritarian processes, but an individual’s right to equal employment opportunities.” 415 U. S., at 51; see also Atchison, T. & S. F. R. Co. v. Buell, 480 U. S. 557, 565 (1987) (“[Notwithstanding the strong policies encouraging arbitration, ‘different considerations apply where the employee’s claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers’” (quoting Barrentine v. Arkansas-Best Freight System, Inc., 450 U. S. 728, 737 (1981))).
When the majority does speak to Gardner-Denver, it misreads the case in claiming that it turned solely “on the narrow ground that the arbitration was not preclusive because the collective-bargaining agreement did not cover statutory claims.” Ante, at 262. That, however, was merely one of several reasons given in support of the decision, see Gardner-Denver, 415 U. S., at 47-59, and we raised it to explain why the District Court made a mistake in thinking that the employee lost his Title VII rights by electing to pursue the contractual arbitration remedy, see id., at 49-50. One need only read Gardner-Denver itself to know that it was not at all so narrowly reasoned, and we have noted already how later cases have made this abundantly clear. Barrentine, sUpra, at 737, provides further testimony: *283 rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.
*282 “Not all disputes between an employee and his employer are suited for binding resolution in accordance with the procedures established by collective bargaining. While courts should defer to an arbitral decision where the employee’s claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee’s claim is based on
*283 “These considerations were the basis for our decision in [Gardner-Denver].”
See also Gilmer v. Interstate/Johnson Lane Corp., 500 U. S. 20, 35 (1991) (“An important concern” in Gardner-Denver “was the tension between collective representation and individual statutory rights ... ”). Indeed, if the Court can read Gardner-Denver as resting on nothing more than a contractual failure to reach as far as statutory claims, it must think the Court has been wreaking havoc on the truth for years, since (as noted) we have unanimously described the case as raising a “seemingly absolute prohibition of union waiver of employees’ federal forum rights.” Wright, 525 U. S., at 80.[2] Human ingenuity is not equal to the task of reconciling statements like this with the majority’s representation that Gardner-Denver held only that “the arbitration was not preclusive because the collective-bargaining agreement did not cover statutory claims.” Ante, at 262.[3]
*284 Nor, finally, does the majority have any better chance of being rid of another of Gardner-Denver’s statements supporting its rule of decision, set out and repeated in previous quotations: “in arbitration, as in the collective-bargaining process, a union may subordinate the interests of an individual employee to the collective interests of all employees in the bargaining unit,” ante, at 269 (citing 415 U. S., at 58, n. 19), an unacceptable result when it comes to “an individual’s right to equal employment opportunities,” id., at 51. The majority tries to diminish this reasoning, and the previously stated holding it supported, by making the remarkable rejoinder that “[w]e cannot rely on this judicial policy concern as a source of authority for introducing a qualification into the ADEA that is not found in its text.” Ante, at 270.[4] It is enough to recall that respondents are not seeking *285 to “introduc[e] a qualification into” the law; they are justifiably relying on statutory-interpretation precedent decades old, never overruled, and serially reaffirmed over the years. See, e. g., McDonald v. West Branch, 466 U. S. 284, 291 (1984); Barrentine, 450 U. S., at 742. With that precedent on the books, it makes no sense for the majority to claim that “judicial policy concern[s]” about unions sacrificing individual antidiscrimination rights should be left to Congress.
For that matter, Congress has unsurprisingly understood Gardner-Denver the way we have repeatedly explained it and has operated on the assumption that a CBA cannot waive employees’ rights to a judicial forum to enforce antidiscrimination statutes. See, e. g., H. R. Rep. No. 102-40, pt. 1, p. 97 (1991) (stating that, “consistent with the Supreme Court’s interpretation of Title VII in [Gardner-Denver],” “any agreement to submit disputed issues to arbitration ... in the context of a collective bargaining agreement . . . does not preclude the affected person from seeking relief under the enforcement provisions of Title VII”). And Congress apparently does not share the Court’s demotion of Gardner-Denver’s holding to a suspect judicial policy concern: “Congress has had [over] 30 years in which it could have corrected our decision ... if it disagreed with it, and has not chosen to do so. We should accord weight to this continued acceptance of our earlier holding.” Hilton, 502 U. S., at 202; see also Patterson, 491 U. S., at 172-173.
Ill
On one level, the majority opinion may have little effect, for it explicitly reserves the question whether a CBA’s waiver of a judicial forum is enforceable when the union controls access to and presentation of employees’ claims in arbitration, ante, at 273-274, which “is usually the case,” McDonald, supra, at 291. But as a treatment of precedent in statutory interpretation, the majority’s opinion cannot be *286 reconciled with the Gardner-Denver Court’s own view of its holding, repeated over the years and generally understood, and I respectfully dissent.

Referring to the potential conflict between individual and collective interests, the Court asserts that it “cannot rely on this judicial policy concern as a source of authority for introducing a qualification into the ADEA that is not found in its text.” Ante, at 270. That potential conflict of interests, however, was a basis for our decision in several pertinent cases, including Alexander v. Gardner-Denver Co., 415 U. S. 36 (1974), and Gilmer v. Interstate/Johnson Lane Corp., 500 U. S. 20, 35 (1991), and in the intervening years Congress has not seen fit to correct that interpretation. The Court’s derision of that “policy concern” is particularly disingenuous given its subversion of Gardner-Denver’s holding in the service of an ex-tratextual policy favoring arbitration.

 Gardner-Denver also contained some language seemingly prohibiting even individual prospective waiver of federal forum rights, see 415 U. S., at 51-52, an issue revisited in Gilmer v. Interstate/Johnson Lane Corp., 500 U. S. 20 (1991), and not disputed here.

 The majority seems inexplicably to think that the statutory right to a federal forum is not a right, or that Gardner-Denver failed to recognize it because it is not “substantive.” Ante, at 256-257, n. 5. But Gardner-Denver forbade union waiver of employees’ federal forum rights in large part because of the importance of such rights and a fear that unions would too easily give them up to benefit the many at the expense of the few, a far less salient concern when only economic interests are at stake. See, e. g., Barrentine v. Arkansas-Best Freight System, Inc., 450 U. S. 728, 737 (1981).

 There is no comfort for the Court in making the one point on which we are in accord, that Gardner-Denver relied in part on what the majority describes as “broad dicta that was highly critical of the use of arbitration for the vindication of statutory antidiscrimination rights.” Ante, at 265. I agree that Gardner-Denver’s “‘mistrust of the arbitral process’... has been undermined by our recent arbitration decisions,” Gilmer, 500 U. S., at 34, n. 5 (quoting Shearson/American Express Inc. v. McMahon, 482 U. S. 220, 231 (1987)), but if the statements are “dicta,” their obsolescence is as irrelevant to Gardner-Denver’s continued vitality as their currency *284 was to the case’s holding when it came down; in Gardner-Denver itself we acknowledged “the federal policy favoring arbitration,” 415 U. S., at 46, n. 6, but nonetheless held that a union could not waive its members’ statutory right to a federal forum in a CBA.

 The majority says it would be “particularly inappropriate” to consider Gardner-Denver’s conflict-of-interest rationale because “Congress has made available” another “avenue” to protect workers against union discrimination, namely, a duty of fair representation claim. Ante, at 272. This answer misunderstands the law, for unions may decline for a variety of reasons to pursue potentially meritorious discrimination claims without succumbing to a member’s suit for failure of fair representation. See, e. g., Barrentine, 450 U. S., at 742 (“[E]ven if the employee’s claim were meritorious, his union might, without breaching its duty of fair representation, reasonably and in good faith decide not to support the claim vigorously in arbitration”). More importantly, we have rejected precisely this argument in the past, making this yet another occasion where the majority ignores precedent. See, e. g., ibid.; Gardner-Denver, supra, at 58, n. 19 (noting that a duty of fair representation claim would often “prove difficult to establish”). And we were wise to reject it. When the Court construes statutes to allow a union to eliminate a statutory right to sue in favor of arbitration in which the union cannot represent the employee because it agreed to the employer’s challenged action, it is not very consoling to add that the employee can sue the union for being unfair.