825 So.2d 988 (2002)
ULICO CASUALTY COMPANY and Eagle Metal Fabricators, Appellants,
v.
Roger FERNANDEZ, Appellee.
No. 1D01-1783.
District Court of Appeal of Florida, First District.
July 1, 2002.
Rehearing Denied July 31, 2002.
*989 Steven P. Kronenberg and Lawrence E. Root of Kelley, Kronenberg, Gilmartin, Fichtel & Wander, P.A., Miami Lakes; John H. Lewis, Boca Raton, for Appellants.
Mark L. Zientz and Andrea Cox of the Law Offices of Mark L. Zientz, P.A., Miami, for Appellee.
ERVIN, J.
This is an appeal of a nonfinal workers' compensation order[1] in which the judge of compensation claims (JCC) denied the motion of Eagle Metal Fabricators and Ulico Casualty Co., respectively the employer and insurance carrier (E/C), to dismiss a petition for benefits on the ground that the collective bargaining agreement (CBA) entered into between the employer and the union of which claimant/employee, Roger Fernandez, is a member, was null and void, under the provisions of section 440.211, Florida Statutes (1995).[2] The JCC concluded that the agreement diminished the employee's entitlement to an independent medical examination (IME), otherwise available to him under chapter 440, Florida Statutes, contrary to section 440.211(2).[3] We agree with the E/C that the agreement does not diminish such benefit; accordingly, we reverse as to this point, thereby mooting consideration of the remaining issues.
*990 In reaching her decision that the CBA diminished the benefits which the claimant could seek under chapter 440, the JCC concluded that the CBA's failure to provide for IMEs constituted a per se diminution of claimant's entitlement to benefits, relying upon the reasoning of this court in Wiggins v. B & L Services, Inc., 701 So.2d 570 (Fla. 1st DCA 1997). In that case, the issue was whether a managed-care arrangement under section 440.134, Florida Statutes (1995), could limit the claimant's choice of an IME physician to those within the carrier's managed-care provider network. The JCC had ruled that the managed-care plan required the claimant to exhaust the grievance procedure before seeking an IME as allowed by section 440.13(5), Florida Statutes.[4]
On review, this court differentiated between the provision of an IME to resolve a dispute over the issue of medical treatment, care, and attendance, and the allowance of an IME to decide a controversy regarding claimant's entitlement to indemnity benefits, by commenting: "In the latter case, denial of the request for IMEs would result in the E/C's controlling the selection of the claimant's expert medical witnesses, thereby denying her a meaningful opportunity to be heard." Id. at 572. The court concluded, however, that the managed-care provisions in chapter 440 applied only to medically necessary remedial treatment, care, and attendance, and did not apply at all to questions of indemnity benefits. It denied the petition for certiorari relief without prejudice to claimant's right to amend, observing that if claimant had a dispute only regarding medical treatment, then the JCC had correctly denied her request for an IME by requiring claimant to exhaust the dispute-resolution procedures in the managed-care arrangement. If, on the other hand, claimant had a dispute regarding indemnity benefits, then the JCC had erred in denying her request for an IME.
The JCC erroneously relied on Wiggins in reaching her decision that the CBA had the effect of diminishing claimant's entitlement to an IME with regard to indemnity as well as medical benefits. Wiggins was based on statutory language particularly applicable to managed-care arrangements, which is far narrower in scope than that provided in section 440.211(1)(b), allowing the parties to a CBA to agree upon "[t]he use of an agreed-upon list of certified health care providers of medical treatment which may be the exclusive source of all medical treatment under this chapter." (Emphasis added.) Unlike section 440.134, interpreted by Wiggins to apply only to requests for IMEs involving exclusively medical care,[5] and not to claims for IMEs for the purpose of determining an injured employee's entitlement to potential indemnity benefits, the language in section 440.211(1)(b) does not include any requirement whatsoever of an IME. The statute's demands are satisfied by the CBA's provision of an agreed list of medical healthcare providers who exclusively furnish the employee all the medical care essential under chapter 440.
The CBA before us complies with the statute's directives. Article III of the CBA pertaining to "Authorized Medical Providers" states as follows:

*991 (a) All medical and hospital services required by employees subject to this Agreement as the result of compensable personal injury, including occupational disease, shall be furnished by certified health care providers and facilities selected by the employee from a list of certified health care providers negotiated by the parties to this Agreement, hereinafter referred to as authorized providers. A list of the authorized providers shall be made available to all employees subject to this Agreement. All authorized providers, or other health care facilities, shall be board certified in their respective specialties. The parties to this Agreement may agree on a case-by-case basis to permit a board eligible physician to act as an authorized provider, in the event that an acceptable board certified physician is not reasonably available.
(b) In case of emergency when no authorized provider is available, the employee may seek treatment from a health care professional or facility not otherwise authorized by this Agreement, to provide treatment during the emergency. Responsibility for treatment shall be transferred to an authorized provider as soon as possible, consistent with sound medical practices.
(c) After selecting an authorized provider to furnish treatment, an employee may change once to another authorized provider. When referred by the authorized provider to another provider in a particular specialty, the employee may also change once to another authorized provider in such specialty. Additional changes will be made only with the agreement of the EMPLOYER.
(d) Neither the EMPLOYER nor the UNIONS shall be responsible for the cost of medical services furnished by a health care professional or facility not authorized pursuant to this Agreement.
(e) The list of authorized providers shall contain sufficient numbers of providers for each of the specialties which the parties to this Agreement believe are required to respond to the needs of employees subject to this Agreement. In the event that an authorized provider furnishing treatment to an employee determines that consultation or treatment is necessary from a specialty for which no authorized provider has been selected through this Agreement, or in the event that distance makes it impractical for treatment from the authorized provider, the authorized provider shall select the additional specialist or the additional provider who offers treatment at a practical distance for the employee.
(f) An employee may request a second opinion from an authorized provider regarding diagnosis, treatment, evaluation or related issue. Only one such second opinion shall be permitted for any issue.
(g) Both the EMPLOYER and the employee shall be bound by the opinions and recommendations of the authorized providers selected in accordance with this Agreement. In the event of disagreement with an authorized provider's findings or opinion, the sole recourse shall be to obtain a second opinion from another authorized provider and to present the second opinion through the dispute prevention and resolution procedures established in this Agreement.

*992 (h) The parties to this Agreement agree that it is in their mutual best interests to establish a schedule limiting the fees which the authorized providers may charge for providing documents and narrative reports, and will work to establish such schedule with the authorized providers.
The CBA differs from that discussed in Heric v. City of Ormond Beach, 728 So.2d 1247 (Fla. 1st DCA 1999), which required an employee to exhaust his personal and sick leave benefits before he could receive his workers' compensation benefits. Nothing in section 440.211 countenances such an arrangement; in fact, the CBA there was contrary to the provisions of section 440.21, Florida Statutes, which invalidates any agreement requiring an employee to waive his or her right to compensation.
We are not unaware that section 440.211(1)(c) authorizes "[t]he use of a limited list of physicians to conduct independent medical examinations which the parties may agree shall be the exclusive source of independent medical examiners pursuant to this chapter." After comparing the language in subsection (1)(c) with that in subsection (1)(b), we are of the opinion that the statute does not inflexibly require a CBA to include an alternative list of IME providers once the agreement makes available to an injured worker "a list of certified health care providers of medical treatment," as permitted by section 440.211(1)(b). The parties to the agreement may bargain for and agree upon, in addition to a generic list of medical providers, a more particularized list of IME physicians, but the absence of such additional care from a CBA does not make it null and void. If a CBA were interpreted as diminishing a worker's entitlement to chapter 440 benefits because it specifically failed to offer a list of IME physicians, such a construction would negate the language in subsection (1)(b), stating that the list of health-care providers set out therein "may be the exclusive source of all medical treatment."
In any event, although the agreement before us does not explicitly afford an employee the benefit of an IME, it does provide him or her with the right to a second opinion, which, while not identical to the procedure afforded by section 440.13(5), Florida Statutes, is somewhat comparable because, if the employee is dissatisfied with the opinion of the physician selected, he or she has the right to seek the opinion of a different physician designated in the list. Although the employee does not have the broader range of care available under section 440.13(5). we consider it important to observe once again that the alternative procedure afforded by a CBA need not be identical to that provided by chapter 440 without offending the provision in section 440.211(2) precluding the diminishment of an employee's entitlement to benefits.
Indeed, in Gassner v. Bechtel Construction, 702 So.2d 548 (Fla. 1st DCA 1997), a similar argument was raised wherein the worker contended that his chapter 440 benefits were diminished by a CBA, which, among other things, denied him the right to be treated by a physician of his own choosing by restricting his choice from a list selected by the union and employer, and denied him as well the right to an IME, by limiting him only to a single, second medical opinion. In answering these arguments and others made by the employee that the CBA violated section 440.211(2), this court made the following pertinent observations:
By definition, at least some of the procedures in a workers' compensation alternative dispute resolution system must differ from the dispute resolution procedures set out in chapter 440, Florida *993 Statutes (1995). Identical procedures do not constitute an alternative. When, as section 440.211 contemplates, a collective bargaining agreement establishes an alternative dispute resolution system, new means and methods are brought into existence to deliver the same statutory benefits. These procedural differences do not run afoul of section 440.211(2), Florida Statutes (1995). If, as appellant argues, the agreement creates procedural requirements for the receipt of benefits that chapter 440 does not impose, the agreement also creates procedural opportunities for the provision of benefits that chapter 440 does not afford. As long as the benefits themselves are undiminished, the requirements of section 440.211, Florida Statutes (1995), are met.
Id. at 552-53 (footnotes omitted).
We therefore agree that although the CBA before us makes no explicit provision for an IME, it nonetheless adequately complies with section 440.211(1)(b) by providing Fernandez with a list of medical providers agreed upon by both his employer and his union, and it thereby supplants without diminishingthe provisions of chapter 440.
The order denying the motion to dismiss is
REVERSED.
BARFIELD and VAN NORTWICK, JJ., concur.
NOTES
[1] Because the order determined that the judge of compensation claims had jurisdiction over a petition for benefits, it was appealable pursuant to Florida Rule of Appellate Procedure 9.180(b)(1)(A).
[2] Section 440.211 provides in part:

(1) Subject to the limitation stated in subsection (2), a provision that is mutually agreed upon in any collective bargaining agreement filed with the division between an individually self-insured employer or other employer upon consent of the employer's carrier and a recognized or certified exclusive bargaining representative establishing any of the following shall be valid and binding:
(a) An alternative dispute resolution system to supplement, modify, or replace the provisions of this chapter which may include, but is not limited to, conciliation, mediation, and arbitration. Arbitration held pursuant to this section shall be binding on the parties.
[3] Subsection (2) of the statute provides: "Nothing in this section shall allow any agreement that diminishes an employee's entitlement to benefits as otherwise set forth in this chapter. Any such agreement in violation of this provision shall be null and void."
[4] Section 440.13(5)(a) states in part: "In any dispute concerning overutilization, medical benefits, compensability, or disability under this chapter, the carrier or the employee may select an independent medical examiner."
[5] Wiggins relied primarily on section 440.134(16), which refers to the medical care described under subsections 440.13(2)(a) and (b), Florida Statutes (1995), involving "medically necessary remedial treatment, care, and attendance."