825 So.2d 435 (2002)
Jean ARISTON, Appellant,
v.
ALLIED BUILDING CRAFTS and Ulico Casualty Company, Appellees.
No. 1D01-1208.
District Court of Appeal of Florida, First District.
July 1, 2002.
Rehearing Denied July 31, 2002.
Mark L. Zientz and Andrea Cox of the Law Offices of Mark L. Zientz, P.A., Miami, for Appellant.
Steven P. Kronenberg and Lawrence E. Root of Kelley, Kronenberg, Gilmartin, Fichtel & Wander, P.A., Miami Lakes; John H. Lewis, Boca Raton, for Appellees.
ERVIN, J.
This is an appeal by claimant/appellant, Jean Ariston, from a final order dismissing *436 his petition for workers' compensation benefits. The judge of compensation claims (JCC) concluded that she lacked jurisdiction over the petition, because a collective bargaining agreement (CBA) between Ariston's union and his employer, appellee Allied Building Crafts, created an alternative dispute resolution (ADR) system, which, pursuant to section 440.211, Florida Statutes (1997),[1] replaces the provisions afforded to appellee's employees under chapter 440, Florida Statutes. Ariston raises numerous issues directed to the order of dismissal. We affirm as to all.
Ariston first complains that the CBA is null and void because it is prohibited by 29 U.S.C. § 411(a)(4), which provides: "No labor organization shall limit the right of any member thereof to institute an action ... in a proceeding before any administrative agency[.]" Appellant cites no case, nor have we found any, wherein a court applied section 411 to a situation such as this. Section 411 is the "Bill of Rights of Members of Labor Organizations" within Title 29, chapter 11, of the U.S.Code, dealing with Labor Management Reporting and Disclosure Procedure. It guarantees union members equal rights in voting and participation, freedom of speech at union meetings and assembly with other members, imposition of union dues and assessments only upon a majority vote, access to courts to redress violations of such rights, and protection against improper discipline by the union. "The Bill of Rights section of the Act is designed to foster democratic governance within labor unions, and to encourage members freely to dissent from the policies and administration of the leadership or to discuss openly those policies and practices." Mallick v. Int'l Broth. of Elec. Workers, 644 F.2d 228, 235 (3d Cir.1981). Accord Ryan v. Int'l Broth. of Elec. Workers, 241 F.Supp. 489, 492 (N.D.Ill.1965) (explaining that the purpose of the Bill of Rights is to protect the rights of union members by ensuring access to courts for redress of violations of the rights secured), aff'd, 361 F.2d 942 (7th Cir.1966); Stout v. Constr. & Gen'l Laborers Dist. Council of Chicago & Vicinity, 226 F.Supp. 673, 678 (N.D.Ill.1963) (stating that the Bill of Rights was intended to "preserve internal union democracy against assaults of autocratic union management"). Section 411 does not apply.
Ariston also contends that federal case law precluded his union and employer from bargaining away his rights under chapter 440, citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); and Air Line Pilots Ass'n International v. Northwest Airlines, Inc., 199 F.3d 477 (D.C.Cir. 1999) (granting rehearing en banc and vacating judgment). The Court in Gardner-Denver held that submitting to arbitration pursuant to a CBA on the issue of employment discrimination under the employment contract could not deprive a union member of his right afterward to bring a race discrimination action against his employer under Title VII of the Civil Rights Act of *437 1964. In Gilmer, the Court concluded that an individual could enter into an agreement with his employer to arbitrate any controversy arising out of his employment, and thus could be barred from bringing an age discrimination suit in federal court under the Age Discrimination in Employment Act and instead could be compelled to arbitrate. The D.C. Circuit construed the difference between the two cases as follows: "Unless the Congress has precluded his doing so, an individual may prospectively waive his own statutory right to a judicial forum, but his union may not prospectively waive that right for him." Air Line Pilots Ass'n, 199 F.3d at 484.
This principle does not apply to the situation at bar, in that the legislature both established the workers' compensation system and enacted section 440.211 expressly approving the development by employers and unions of alternative systems of resolving compensation disputes. Ariston's union did not bargain away his inviolable right to utilize chapter 440; the legislature declared that it is not an inviolable right, and instead permitted the CBA mechanism to provide the only avenue for recovery of compensation benefits.
Next, Ariston complains that the CBA is null and void because, unlike section 440.13(5), Florida Statutes (1997), it makes no provision for an independent medical examination (IME), and it thereby diminishes his right to benefits, contrary to section 440.211(2), which states: "Nothing in this section shall allow any agreement that diminishes an employee's entitlement to benefits as otherwise set forth in this chapter. Any such agreement in violation of this provision shall be null and void." In her order, the JCC somewhat inconsistently ruled that because the CBA was silent regarding an employee's entitlement to an IME, the CBA does not replace the provisions of section 440.13(5) regarding such subjects; consequently, Ariston's entitlement to such benefit had not been diminished. The JCC appears to have implicitly concluded that Ariston could still pursue a claim for an IME under chapter 440; nevertheless, she dismissed the petition. We agree that the JCC reached the correct result, but for the wrong reason.
As we explained in Ulico Casualty Co. v. Fernandez, 825 So.2d 988 (Fla. 1st DCA 2002), a CBA which sufficiently complies with the provisions of section 440.211(1)(b), Florida Statutes,[2] does not diminish an employee's chapter 440 benefits by not including as well "a limited list of physicians to conduct independent medical examinations," as provided in section 440.211(c). In Fernandez, we concluded that although the CBA made no explicit provision for an IME, its terms sufficiently complied with the requirements of section 440.211(1)(b), and, as a consequence, it supplanted or replaced, without diminishing, the employee's entitlement to chapter 440 benefits. The same result applies to the case before us in that the CBA under review is identical to that in Fernandez. Therefore, the CBA before us validly supplants the provisions of chapter 440.
We have considered appellant's remaining issues, and we affirm as to all. As for the argument that the JCC erred in refusing, on jurisdictional grounds, to determine whether 29 U.S.C. § 411(a)(4) preempts the collective bargaining procedure authorized by section 440.211, Ariston relies on FCCI Mutual Insurance Co. v. Cayce's Excavation, Inc., 675 So.2d 1028 (Fla. 1st DCA 1996), which addressed whether the claimant's exclusive remedy for benefits was under the Longshore and Harbor *438 Workers' Compensation Act, rather than under chapter 440. The court in FCCI stated that the JCC had jurisdiction to determine whether the claimant was required by section 440.09(2) to seek benefits under federal, rather than state law. This was not a determination that the state law was unconstitutional under the Supremacy Clause. A JCC clearly does not have jurisdiction to declare a state statute unconstitutional or violative of federal law. Hensley v. Punta Gorda, 686 So.2d 724 (Fla. 1st DCA 1997).
Finally, the constitutional arguments raised before us as to the validity of section 440.211 have previously been decided adversely to appellant's position in Gassner v. Bechtel Construction, 702 So.2d 548 (Fla. 1st DCA 1997).
The order dismissing the petition for benefits is in all respects
AFFIRMED.
BARFIELD and VAN NORTWICK, JJ., concur.
NOTES
[1] Section 440.211 provides in part:

(1) Subject to the limitation stated in subsection (2), a provision that is mutually agreed upon in any collective bargaining agreement filed with the division between an individually self-insured employer or other employer upon consent of the employer's carrier and a recognized or certified exclusive bargaining representative establishing any of the following shall be valid and binding:
(a) An alternative dispute resolution system to supplement, modify, or replace the provisions of this chapter which may include, but is not limited to, conciliation, mediation, and arbitration. Arbitration held pursuant to this section shall be binding on the parties.
[2] The above subsection provides that a CBA may include "[t]he use of an agreed-upon list of certified health care providers of medical treatment which may be the exclusive source of all medical treatment under this chapter."