889 So.2d 149 (2004)
Shahir SELIM, Appellant,
v.
PAN AMERICAN AIRWAYS CORP., Appellee.
No. 4D04-29.
District Court of Appeal of Florida, Fourth District.
December 8, 2004.
*150 Ephraim Roy Hess, William R. Amlong and Karen Coolman Amlong of Amlong & Amlong, P.A., Fort Lauderdale, for appellant.
*151 Edward L. Artau of the Law Offices of Edward L. Artau, P.A., Boca Raton, and Robert M. Disch of Sheppard Maullin Richter & Hampton, LLP, Washington, D.C., for appellee.
GUNTHER, J.
Shahir Selim, a pilot and Egyptian Arab, filed suit against his former employer, Pan American Airways Corp., for violations of the Florida Civil Rights Act and the Florida Whistleblower Act. Selim appeals the trial court's entry of a Summary Final Judgment in favor of Pan Am finding that his claims were both collaterally estopped and preempted by union arbitration of employment grievances raised by him against Pan Am. We reverse as to both preclusion and preemption.

Factual Background
Pan Am and the Air Line Pilots Association, International (ALPA), on behalf of Pan Am pilots, entered into a collective bargaining agreement (CBA) in November 1999. The CBA was entered into in accordance with the Railway Labor Act (RLA), 45 U.S.C. § 151, et seq.
Several provisions of the CBA are relevant to this appeal. Section 5 addresses travel expenses and provides that "[a] pilot required by [Pan Am] to perform travel of a special or irregular nature will be reimbursed for reasonable and necessary expenses supported by receipts." Section 6B1. considers moving expenses resulting from pilot reassignment:
[Pan Am] will pay moving expenses when a pilot is displaced from his position and, through the bidding or displacement process, obtains a new position at another domicile. [Pan Am] will not pay expenses for moves of newly hired pilots to their initial assignments or for voluntary moves resulting from vacancy awards to pilots not displaced or not staffing a new domicile.
Section 15 relates to the physical standards required of pilots and provides that "[i]f [Pan Am] reasonably questions the physical or psychological fitness [of] a pilot, it may send him to a Company Medical Examiner." However, the pilot may seek a second opinion, and if that opinion is in agreement with the initial opinion, no further examination shall be undertaken.
Section 19 addresses discipline and discharge and provides that "[a] pilot may not be disciplined or discharged without just cause." Section 20 establishes a grievance process for Pan Am conduct contrary to the provisions of the CBA. Section 21 provides for the establishment of a System Board of Adjustment (Board) with "jurisdiction over disputes between any pilot covered by [the CBA] and [Pan Am] growing out of grievances or out of interpretation or application of any of the terms of [the CBA]." Section 22 addresses seniority and mandates that seniority shall dictate the promotion and assignment of pilots. Section 26 requires Pan Am to furnish identification badges to pilots. Additionally, the section includes a non-discrimination provision:
The provisions of [the CBA] apply equally to all pilots regardless of color, race, creed, national origin, sex, age, disability or former or present military status, in accordance with applicable law.
In 1999, Selim was recalled from furlough by Pan Am to work as a Flight Engineer based at Portsmouth, New Hampshire. He was upgraded to First Officer in January 2000. In May 2001, Pan Am established a new base in Sanford, Florida, and Selim requested, and was granted, a transfer to Sanford. Selim submitted documentation for reimbursement of his moving expenses, but the request was denied by Pan Am.
*152 Later in May 2001, Selim was grounded due to concerns about his hearing. He was subjected to multiple medical tests, all of which indicated that his hearing was normal. He was returned to duty status in July 2001.
In August 2001, Selim filed a grievance against Pan Am for failing to upgrade him to Captain even though a pilot with less seniority was upgraded in March 2000. Also in August, Selim noticed that his identification badge had expired while he was grounded. After several unsuccessful attempts to have a new photograph taken, Pan Am arranged for Selim to fly to Portsmouth in October 2001 to have the new badge prepared. He requested reimbursement for travel expenses not arranged by Pan Am, and Pan Am denied the request.
After receiving his new badge, Selim arrived at the airport for his return flight, as a passenger, not as a member of the crew, to Sanford. He was carrying two bags, one of which he planned to carry on, and the agent at the ticket counter informed him that Pan Am had adopted a new policy prohibiting carry-on luggage following September 11. Selim allegedly became argumentative and refused to check the bag. Selim refused to check his bag again at the gate and argued with Pan Am personnel in front of passengers. Selim ultimately checked his bag when he was told he could not board the plane otherwise. Selim denies that he was argumentative at any time during the incident. However, the following day, employment charges were filed against him for his conduct. Following an investigation, he was terminated from his employment later in October for refusing to comply with instructions and company policy and being argumentative in front of passengers and employees.
In December 2002, Selim filed suit against Pan Am. Selim set forth allegations of Pan Am violations of the CBA regarding refusing to pay moving expenses, requiring multiple medical examinations, failing to promote based on seniority, and discriminating in providing an identification badge. He also alleged that Pan Am retaliated against him for filing state and federal employment discrimination complaints based on his termination. Count I of the complaint claimed a violation of the Florida Civil Rights Act (FCRA), Florida Statutes Chapter 760, for discriminatory termination based on national origin/race. Count II alleged a violation of the FCRA for retaliatory termination. Count III set forth a claim of violation of the Florida Whistleblower Act, Florida Statutes section 448.101, for retaliatory termination.
Pan Am then filed a motion to dismiss, or alternatively, for summary judgment. In support of the motion, Pan Am submitted a memorandum of law asserting res judicata, collateral estoppel, and preemption based on the fact that Selim had filed five grievances under the CBA which had been arbitrated by Pan Am's System Board of Adjustment. The five grievances related to moving expenses, physical examinations, travel expenses, promotion to captain, and termination.
The Board found that Sanford was a new domicile and that Selim was entitled to reimbursement for his moving expenses under Section 6B1. of the CBA. Regarding the medical examinations, the Board concluded that the third and fourth examinations were unreasonable and reserved jurisdiction to consider damages. The Board denied reimbursement of travel expenses for the identification badge trip because it found that Selim had been uncooperative in earlier attempts to be photographed, making the trip one not required *153 by Pan Am. Regarding a promotion to captain, the Board determined that Selim's seniority entitled him to an upgrade in March 2000, and required that he be selected for the next captain's training vacancy and be awarded captain's pay from the date of his grievance. Lastly, the Board addressed Selim's termination for disobeying reasonable orders from Pan Am employees. The Board concluded that any disruption following September 11 could have adverse effects, and discipline was required. However, the Board reinstated Selim and reduced the sanction to a ninety-day suspension.
In response to the motion for dismissal or summary judgment and the accompanying memorandum of law, Selim filed an affidavit indicating that although he filed the grievances considered by the Board, ALPA attorneys handled the arbitration so that he was not involved in any strategic decisions. Selim also emphasized that the arbitration did not consider any discrimination claim. Apparently, Selim raised a violation of the nondiscrimination clause of the CBA in each of the five individual grievances against Pan Am, but the Board did not address these claims because no evidence or argument was presented by the ALPA attorneys at the hearing.
The trial court held a hearing on Pan Am's motion for dismissal or summary judgment. Following the hearing, the trial court entered a Final Summary Judgment in favor of Pan Am, finding that Selim's claims were barred by collateral estoppel based on the Board proceeding and preempted by the Airline Deregulation Act (ADA).

Analysis
The standard of review applicable to summary judgment is de novo. Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001); Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000); Bruckner v. City of Dania Beach, 823 So.2d 167, 171 (Fla. 4th DCA 2002). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Aberdeen, 760 So.2d at 130.

Res Judicata and Collateral Estoppel
Res judicata means "that when a fact, an issue, or a cause of action has been decided by a court of competent jurisdiction, neither of the parties involved shall be allowed to call into question and relitigate the thing decided, so long as the judgment or decree stands unreversed." AGB Oil Co. v. Crystal Exploration & Prod. Co., 406 So.2d 1165, 1167 (Fla. 3d DCA 1981)(citing Gordon v. Gordon, 59 So.2d 40 (Fla.1952)); see also Huff Groves Trust v. Caulkins Indiantown Citrus Co., 810 So.2d 1049, 1050 (Fla. 4th DCA 2002). For res judicata to apply, four elements must be established: "1) identity in the thing sued for; 2) identity of the cause of action; 3) identity of persons and parties of the action; and 4) identity of the quality in the person for or against whom the claim is made." Signo v. Fla. Farm Bureau Cas. Ins. Co., 454 So.2d 3, 4 (Fla. 4th DCA 1984); see also Gomez-Ortega v. Dorten, Inc., 670 So.2d 1107, 1108 (Fla. 3d DCA 1996)(citing Albrecht v. State, 444 So.2d 8, 11-12 (Fla.1984)).
One aspect of res judicata is collateral estoppel. State v. Freund, 626 So.2d 1043, 1045 n. 1 (Fla. 4th DCA 1993). "Collateral estoppel may be employed where two causes of action fail to meet the identity test [of res judicata], but the other identities are present, i.e., identity of parties and issues." Palm AFC Holdings, Inc. v. Palm Beach County, 807 So.2d 703, 704 (Fla. 4th DCA 2002).
Selim contends that based on a line of federal cases, his claims are not barred *154 by res judicata or collateral estoppel. The FCRA is patterned after Title VII, and therefore, federal precedent is applicable to the issue at hand. See Castleberry v. Edward M. Chadbourne, Inc., 810 So.2d 1028, 1030 n. 3 (Fla. 1st DCA 2002).
The first case is Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The case involved a grievance-arbitration provision in a collective bargaining agreement and racial discrimination claims under Title VII. Id. at 38, 94 S.Ct. 1011. The collective bargaining agreement also contained a "no discrimination" clause. Id. at 39, 94 S.Ct. 1011. The employee was terminated and filed grievances for violation of the collective bargaining agreement and later alleged racial discrimination. Id. at 39, 42, 94 S.Ct. 1011. The arbitration process ran its course, with the arbitrator determining there was just cause for the employee's termination and not commenting upon the claim of racial discrimination. Id. at 42, 94 S.Ct. 1011. After the arbitration concluded, the employee filed suit in federal district court under Title VII. Id. at 43, 94 S.Ct. 1011. The employer moved for summary judgment, which was granted, because the court concluded that the arbitration procedure precluded the Title VII suit. Id. The circuit court affirmed, and the United States Supreme Court reversed. Id.
The United States Supreme Court analyzed the purpose and operation of Title VII and concluded:
[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement rather than supplant, existing laws and institutions relating to employment discrimination. In sum, Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement.
Id. at 48, 94 S.Ct. 1011. The Court also discussed the fact that the contractual and statutory rights at issue created two separate schemes of remedies, and that because of the difference between collective and individual rights under the agreement and Title VII, "an employee's rights under Title VII are not susceptible to prospective waiver" in a collective bargaining agreement. Id. at 51-52, 94 S.Ct. 1011. Therefore, preclusion did not prevent the Title VII suit because "the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII." Id. at 59-60, 94 S.Ct. 1011. Gardner-Denver stands for the proposition that a collective bargaining agreement arbitration decision and award does not bar Title VII discrimination claims based on the doctrines of res judicata or collateral estoppel.
In the second case, the United States Supreme Court addressed the intersection of an agreement to arbitrate, this time entered into by an individual securities broker under NYSE requirements and the FAA, and a federal remedial scheme, this time the Age Discrimination in Employment Act (ADEA), in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The securities broker was terminated, and rather than seek arbitration, filed an ADEA claim in district court. Id. at 23-24, *155 111 S.Ct. 1647. The employer filed a motion to compel arbitration which was denied by the district court on the basis of Gardner-Denver, and reversed by the circuit court on the basis that the ADEA did not preclude arbitration. Id. at 24, 111 S.Ct. 1647. The Supreme Court affirmed the circuit court, distinguishing Gardner-Denver in the process. Id. at 35, 111 S.Ct. 1647. The key distinction between the cases was that the individual employee in Gilmer signed an agreement to arbitrate statutory claims, rather than a union signing a collective bargaining agreement to arbitrate contractual and not statutory claims, and thus the employee was precluded from filing suit on the statutory claims. Id. Therefore, Gilmer creates an exception to Gardner-Denver for arbitration clauses signed by individual employees rather than unions.
In the third case, the United States Supreme Court again addressed arbitration under a collective bargaining agreement in Wright v. Universal Maritime Service Corp., 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998). The collective bargaining agreement included a grievance-arbitration provision, and when the injured employee was not permitted to return to work, he filed suit under the Americans with Disabilities Act (ADA) rather than filing a grievance. Id. at 72-74, 119 S.Ct. 391. The district court dismissed the employee's suit for failure to pursue the grievance procedure, and the circuit court affirmed. Id. at 75, 119 S.Ct. 391. The United States Supreme Court reversed and considered the tension between Gardner-Denver and Gilmer. Id. at 75-76, 82, 119 S.Ct. 391. The Court concluded that for a "union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination" to be enforceable, it must be "clear and unmistakable" that a specific statutory right was waived. Id. at 80, 119 S.Ct. 391. Therefore, Wright created another exception to Gardner-Denver for grievance-arbitration clauses that clearly and unmistakably waive an employee's right to bring suit under federal anti-discrimination schemes (or other statutory schemes).
Subsequent federal and state cases have succinctly expressed the rule emerging from the Gardner-Denver line of cases. For example, the District of Columbia Circuit wrote:
We see a clear rule of law emerging from Gardner-Denver and Gilmer: Unless the Congress has precluded his doing so, an individual may prospectively waive his own statutory right to a judicial forum, but his union may not prospectively waive that right for him.
Air Line Pilots Ass'n, Int'l v. Northwest Airlines, Inc., 199 F.3d 477, 484 (D.C.Cir.1999). The First District adopted this explanation of the Gardner-Denver line in Ariston v. Allied Building Crafts, 825 So.2d 435, 436-437 (Fla. 1st DCA 2002).
Based on these authorities, Selim asserts that the Gardner-Denver rule scenario exists where ALPA could not waive his statutory rights under the FCRA (and analogously the Florida Whistleblower Act), he did not individually waive such rights through an arbitration agreement, and the grievance provision of the CBA does not clearly and unmistakably waive the right to a judicial forum for his statutory discrimination or whistleblower claims.
Pan Am responds that the Gardner-Denver line of cases is inapplicable to the case at bar because it did not address grievance arbitration in the context of the RLA. Instead Pan Am relies on cases where statutory claims were deemed precluded due to arbitration decisions by RLA-mandated arbitration boards. See *156 Davila v. Delta Air Lines, Inc., 326 F.3d 1183 (11th Cir.2003); Torre v. Falcon Jet Corp., 717 F.Supp. 1063 (D.N.J.1989); Newton v. S. Pac. Transp. Co., 1992 WL 350245 (W.D.Tex.1992); Metro-North Commuter R.R. Co. v. New York State Executive Dep't Div. of Human Rights, 271 A.D.2d 256, 707 N.Y.S.2d 50 (N.Y.App.2000).
We conclude that the Gardner-Denver line of cases is applicable to the case at bar. The case at bar involves a collective bargaining agreement with a grievance-arbitration provision and a non-discrimination clause; therefore, the general rule applies that ALPA may not waive Selim's statutory claims and the arbitration award does not preclude these claims. The Gilmer exception to the rule does not apply because Selim did not enter into an individual arbitration agreement waiving his statutory rights. The Wright exception to the rule does not apply because the arbitration clause at bar, which applies to "disputes which may arise under the terms of [the CBA]" does not clearly and unmistakably waive his right to a judicial forum for his statutory claims, nor does the non-discrimination clause do so. To be so clear and unmistakable, the clause would need to "explicitly and specifically incorporate statutory nondiscrimination protections." See Mary K. O'Melveny, One Bite of the Apple and One of the Orange: Interpreting Claims that Collective Bargaining Agreements Should Waive the Individual Employee's Statutory Rights, 19 Lab. Law. 185, 198-199 (Fall 2003)(citing, inter alia, Ciambriello v. County of Nassau, 292 F.3d 307, 322-323 (2d Cir.2002), and Carson v. Giant Food, Inc., 175 F.3d 325, 331-332 (4th Cir.1999)).
Additionally, the Air Line Pilots case addressed, and applied, the Gardner-Denver line in the context of the RLA. Therefore, we are more persuaded by Air Line Pilots than Davila, which did not consider the Gardner-Denver line of cases promulgated by the United States Supreme Court.
Therefore, we conclude that the trial court erred by granting summary judgment to Pan Am on the ground of preclusion, whether res judicata or collateral estoppel.

Preemption
The Airline Deregulation Act (ADA) includes the following preemption clause:
Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.
49 U.S.C. § 41713(b)(1). Whether preemption occurs under the clause is determined based on the following general standards:
First, preemption is appropriate only if it is the clear and manifest purpose of Congress. Second, the courts should not lightly infer preemption of actions within the traditional police powers of a state. For a law to be expressly preempted by the ADA, a state must "enact or enforce a law that relates to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect upon them."
Parise v. Delta Airlines, 141 F.3d 1463, 1465-1466 (11th Cir.1998)(internal citations omitted).
The United States Supreme Court has addressed preemption under the ADA. In Morales v. Trans World Airlines, Inc., 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 *157 (1992), addressing state regulation of airline advertisement, the Court determined that "related to" means "having a connection with or reference to airline `rates, routes, or services.'" Id. at 384, 112 S.Ct. 2031 (citation omitted). The Court also recognized that "`[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect." Id. at 390, 112 S.Ct. 2031 (citation omitted). In American Airlines, Inc. v. Wolens, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), a case addressing frequent flyer contracts, the Court set forth that a determination of preemption under the ADA requires a two-pronged consideration: whether a state enacted or enforced any law and whether that law was related to airline rates, routes, or services. Id. at 226, 115 S.Ct. 817. The Court also recognized that the purpose of the ADA is to prevent states from imposing "their own public policies or theories of competition or regulation on the operations of an air carrier." Id. at 229 n. 5, 115 S.Ct. 817. However, the United States Supreme Court has yet to address the definition of "services" under the ADA preemption clause.
Selim contends that his claims are not preempted by the ADA because they do not relate to airline services based on two main cases. The first is Parise. Parise was a customer service agent for Delta who had a "heated discussion" with a supervisor and threatened fellow employees, leading to his termination. 141 F.3d at 1464. Parise filed an FCRA claim for age discrimination in employment. Id. Delta removed the case to federal court, defended on the ground that the termination was justified by Parise's conduct, and asserted that the cause of action was preempted by the ADA. Id. at 1465. The district court agreed, finding that Parise's conduct was tied to safety and security and that such was related to airline service. Id. The Eleventh Circuit reversed based on the following rationale:
The only relevant question with respect to preemption in light of Parise's claim, then, is whether a cause of action brought pursuant to Florida's law prohibiting age discrimination "relates to" rates, routes, or services of an air carrier. Notably, Delta does not posit under the facts of this case the existence of a relationship between an airline's decision to terminate an employee on the basis of age and a concern for airline safety; rather, it is Delta's answer to the complaint that appears to provide the asserted ground for preemption. In resolving the jurisdictional question potentially raised by a statute such as the ADA, however, it is the cause of action and the underlying state law on which it is founded that concerns us.
Id. at 1466. Therefore, the court concluded that the FCRA and age discrimination in employment have no relationship to airline service under the ADA.
Next, Selim relies on Branche v. Airtran Airways, Inc., 342 F.3d 1248 (11th Cir.2003). Branche was Airtran's aircraft inspector at Tampa International Airport and reported ongoing regulatory violations to the FAA. Id. at 1251-1252. Soon after his report, he was accused of falsifying a time card and terminated. Id. at 1252. He filed a claim under the Florida Whistleblower Act. Id. Airtran removed the case to federal court, and argued on summary judgment that Branche's claim was preempted by the ADA. Id. The district court agreed. Id. The Eleventh Circuit reversed, focusing on the Supreme Court's recognition in Wolens that the ADA was intended to "leave the bargained-for aspects of the air carrier-air passenger relationship to the workings of the market" and not to preempt state law claims having *158 no effect on airline competition. Id. at 1255-1256. Branche's actions fell outside the scope of preemption under the ADA, because "safety is not a basis on which airlines compete for passengers, and as such is not something for which air travelers bargain; it is implicit in every ticket sold by every carrier." Id. at 1260. Furthermore, because employment discrimination claims typically also fall outside the preemptive scope of the ADA, the court concluded that "because Branche's state Whistleblower Act claim is fundamentally an employment discrimination claim that does not implicate any arena in which airlines compete... his claim does not relate to the services of an air carrier within the meaning of § 41713, and consequently is not pre-empted under that section." Id. at 1261.
Three additional facts about the Branche opinion are of note. First, the court adopted the expansive Fifth Circuit definition of services under the ADA, which includes not only scheduling and markets as does the Ninth Circuit definition, but also boarding and baggage handling. Id. at 1256-1257. Second, the court noted that "it is the specifics of the retaliation claim, not the whistleblower statute, that appropriately determine pre-emption." Id. at 1263 n. 9. This explanation does appear to be in tension with Parise where it was the cause of action and not the facts giving rise to it that was emphasized. Third, the court noted that the whistleblower amendment to the ADA (the Whistleblower Protection Program (WPP), 49 U.S.C. § 42121) does not discuss preemption, and thus, had no impact on the decision in Branche. Id. at 1264.
Florida cases support Selim's line of authority and argument. In Vanacore v. UNC Ardco Inc., 697 So.2d 892 (Fla. 4th DCA 1997), Vanacore was employed by UNC, an aircraft repair station. Id. at 893. Vanacore was terminated and filed suit under the Florida Whistleblower Act. Id. UNC moved for judgment on the pleadings, arguing that the predecessor statute to the ADA preempted the claim. Id. This Court concluded that the claim was not preempted because the Whistleblower Act "does not impinge on air carriers' rates, routes, or services," and that even if it did, any connection would be too tenuous or remote under Morales. Id. at 893, 894. Additionally, the Second District recently reached the same conclusion as this Court in Vanacore, relying on Branche. See Pohl v. Southeast Airlines, Inc., 880 So.2d 766 (Fla. 2d DCA 2004).
Pan Am responds that Selim's claims are preempted by the ADA based on three main cases. The first is Botz v. Omni Air International, 286 F.3d 488 (8th Cir.2002). Botz was a flight attendant for Omni and was terminated for refusing a flight assignment based on her belief that she would violate FAA hour regulations by doing so. Id. at 489. Botz then filed a claim under Minnesota's whistleblower statute for retaliatory termination. Id. Omni removed the case to federal court and filed a motion to dismiss alleging that the claim was preempted by the ADA and the WPP. Id. The district court agreed. Id. The Eighth Circuit affirmed, stating:
When applied to the facts surrounding Botz's discharge, the Minnesota whistleblower statute has a forbidden connection with air-carrier services. It includes broad authorization to flight attendants to refuse assignments, jeopardizing an air carrier's ability to complete its scheduled flights.
Id. at 494. The court also concluded that the WPP amendment preempted the claims despite not so stating because Congress was aware of the ADA's express preemption provision. Id. at 497. As a result, the court noted that the cases cited *159 by Botz, including this Court's Vanacore decision, which were decided prior to the enactment of the WPP, are of no bearing after enactment. Id.
Pan Am also cites two cases discussing Florida law. The first is Tucker v. Hamilton Sundstrand Corp., 268 F.Supp.2d 1360 (S.D.Fla.2003). Tucker was employed as supervisor of generator repair at UTC (a division of Hamilton), an aircraft parts repair center. Id. at 1361. Tucker filed a complaint with the FAA regarding UTC's compliance with repair regulations. Id. Tucker was then terminated for alleged workplace misconduct. Id. He filed a claim under the Florida Whistleblower Act. Id. UTC asserted that the claim was preempted by the ADA. Id. The district court agreed, without detailed analysis regarding the definition of service. Id. The court wrote that "this Court finds that aircraft generator maintenance is sufficiently related to air carrier service that Tucker's claims are also preempted." Id. at 1364. The Tucker court considered this Court's decision in Vanacore, and found it to be less persuasive than other cases cited because it predates the WPP and "failed to take into account the Supreme Court mandate to interpret the ADA preemption provisions broadly." Id. at 1364 n. 2.
The other case discussing Florida law cited by Pan Am is Simonds v. Pan American Airlines, Inc., 2003 WL 22251155 (D.N.H.2003)(unreported). Simonds was a Pam Am pilot who refused to complete a flight that he believed would violate FAA hour regulations. Id. at *1-*2. Simonds was terminated for not completing the flight, filed a grievance through ALPA, and was reinstated by the decision rendered by the System Board of Adjustment. Id. at *2. He then filed a claim under Florida's Whistleblower Act that Pan Am removed to federal court and then transferred. Id. The district court agreed with Pan Am that the ADA preempted Simonds's employment discrimination claim. Id. In reaching this conclusion, the Simonds court applied the Branche requirement to consider the specifics of the claim and relied on Botz. Id. at *4-*5. The court concluded:
Nevertheless, Simonds' conduct, like that of the flight attendant in Botz, put in jeopardy the air carrier's ability to render service to its passengers, by threatening to ground a plane. Simonds' state law whistleblower claim based upon that conduct is, therefore, preempted.
Id. at *5. The court also differentiated Branche, noting that Branche had reported past violations rather than interrupting present service. Id. at *5.
We conclude that Selim's claims are not preempted by the ADA. Based on Parise, Selim's FCRA claims are not related to airline service. The claims are unlike those in Pan Am's cited cases because they do not involve airline personnel whose conduct prevented the operation of a flight. They are instead about discrimination in employment on the basis of national origin/race, and "[t]he primary rationale relied upon by courts in reaching [such] conclusions [is] the assumed fact that an employee's race and age have little to do with airline safety or competitive efficiency in the marketplace." See Ryan L. Bangert, Comment, When Airlines Profile Based on Race: Are Claims Brought Against Airlines under State Anti-Discrimination Laws Preempted by the Airline Deregulation Act?, 68 J. Air L. & Com. 791, 802 (Fall 2003)(citing Wellons v. Northwest Airlines, Inc., 165 F.3d 493, 495 (6th Cir.1999) and Abdu-Brisson v. Delta Airlines, 128 F.3d 77, 84 (2d Cir.1997)).
Furthermore, Selim's whistleblower claims are not preempted by the ADA. *160 Based on Branche and Vanacore, wrongful discharge claims such as Selim's are too tenuously related to airline service to be preempted. Botz is less persuasive based on Fadaie v. Alaska Airlines, Inc., 293 F.Supp.2d 1210 (W.D.Wash.2003). The court in Fadaie recognized that Botz"improperly conflates" the decision not to board a plane with the state whistleblower claim, because although the decision may affect service, "[t]he subsequent retaliation that is prohibited by state law does not impact prices, routes, or services and does not trigger preemption under § 14713." Id. at 1216-1217. Put simply, Selim's claims are not barred by the ADA because they are about discrimination and retaliation in employment, not getting on a plane and airline service. Therefore, we conclude that the trial court erred by granting summary judgment to Pan Am based on ADA preemption.
However, Pan Am asserts an alternate ground for affirmance of the summary judgment based on preemption under the RLA. The RLA provides for arbitration of "disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 184. "`Congress specifically intended in the RLA to keep railroad labor disputes out of the courts.'" Edelman v. W. Airlines, Inc., 892 F.2d 839, 843 (9th Cir.1989) (citation omitted). In the case of minor disputes arising from the RLA, state law claims are preempted. Id. Minor disputes are those "`growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 563, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987)(citing 45 U.S.C. § 153). On the other hand, major disputes, which are not so preempted, are "those arising `out of the formation or change of collective bargaining agreements covering rates of pay, rules, or working conditions.'" Id. at 562-563, 107 S.Ct. 1410 (citation omitted). "When in doubt, courts have construed railroad labor disputes as `minor,' rather than as `major.'" Watts v. Union Pac. R.R. Co., 796 F.2d 1240, 1245 (10th Cir.1986) (citation omitted). Regarding state law claims:
[E]ven if [the] claim is grounded upon rights which stem from some source other than the CBA (such as state law), the claim will be preempted if it cannot be adjudicated without interpreting the CBA, or if it can be "conclusively resolved" by interpreting the CBA.
Brown v. Ill. Cent. R.R. Co., 254 F.3d 654, 658 (7th Cir.2001).
Pan Am contends that Selim's claims are preempted by the RLA. Pan Am asserts that Selim's claims require interpretation of the CBA, despite their state law nexus, and therefore are minor disputes subject to exclusive RLA and System Board of Adjustment jurisdiction, making them preempted. The cases that Pan Am cites in support of this proposition, however, are inapposite.
Selim responds that his claims are not preempted by the RLA. Regarding the FCRA claim, Selim points to Colorado Anti-Discrimination Commission v. Continental Air Lines, Inc., 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963). Invoking language that signifies preemption analysis, although in a different context, the United States Supreme Court concluded:
There is even less reason to say that Congress, in passing the Railway Labor Act and making certain of its provisions applicable to air carriers, intended to bar States from protecting employees against racial discrimination. No provision in the Act even mentions discrimination in hiring.... Nothing in the Railway *161 Labor Act or in our cases suggests that the Act places upon an air carrier a duty to engage only in fair nondiscriminatory hiring practices. The Act has never been used for that purpose, and we cannot hold it bars Colorado's Anti-Discrimination Act.
Id. at 724, 83 S.Ct. 1022.
On the whistleblower claim, Selim relies on two main cases. The first is Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). Norris was an aircraft mechanic working for Hawaiian. Id. at 249, 114 S.Ct. 2239. He reported a safety problem with the landing gear of an aircraft to the FAA after refusing to fill out paperwork regarding its repair and maintenance. Id. Norris was then terminated for insubordination. Id. at 250, 114 S.Ct. 2239. He filed two separate suits raising state whistleblower claims, and the state trial court found them preempted by the RLA. Id. at 250-251, 114 S.Ct. 2239. The Supreme Court of Hawaii reversed. Id. at 251, 114 S.Ct. 2239. The United States Supreme Court affirmed. Applying a rule developed out of a line of relevant cases, "that a state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the CBA," the Court concluded:
In fact, the "only source" of the right respondent asserts in this action is state tort law. Wholly apart from any provisions of the CBA, petitioners had a state-law obligation not to fire respondent in violation of public policy or in retaliation for whistle-blowing. The parties' obligation under the RLA to arbitrate disputes arising out of the application or interpretation of the CBA did not relieve petitioners of this duty.
Id. at 259, 260, 266, 114 S.Ct. 2239.
In the second case, the Third District considered the preemption of Florida whistleblower claims under the RLA in Roland v. Florida East Coast Railway, LLC, 873 So.2d 1271 (Fla. 3d DCA 2004). The court concluded that the whistleblower claim was not preempted partially based on the rationale of Hawaiian Airlines and partially based on the fact that federal law allows a railroad whistleblower to elect remedies, presumably including those provided under state law. Id. at 1274.
We conclude that Selim's claims are not preempted by the RLA. First, based on Colorado Anti-Discrimination, the fact that preventing discrimination is not one of the purposes of the RLA, and the fact that Selim's FCRA claims are independent of the interpretation of any terms of the CBA, the FCRA claims are not preempted by the RLA. This is the case because "claims based on rights not to be discriminated against on any of many grounds  do not depend on the terms, written or unwritten, of the agreement and are, in fact, purely creatures of statute." See Richard Schoolman, Developments in the Preemption or Preclusion of Otherwise Justiciable Employment-Related Claims by the Railway Labor Act' s Adjustment Board Procedures, and in the Usefulness of Such Procedures (or Their Resulting Decisions) in Defending Against Certain Civil Rights Claims, SH094 ALI-ABA 989, 997 (April 2003). We also conclude that Selim's whistleblower claim is not preempted by the RLA. This is because the Hawaiian Airlines analysis, as adopted in Roland, applies and demonstrates that the RLA does not preempt Florida whistleblower claims, such as Selim's, that are independent of reference to the CBA.
Therefore, because we conclude that Selim's claims are neither preempted by the ADA nor the RLA, the trial court erred by granting summary judgment to Pan Am on the basis of preemption.

Conclusion
In sum, we conclude that the trial court erred by granting summary judgment to *162 Pan Am on Selim's FCRA and whistleblower claims based on preclusion and preemption. The claims were not barred by res judicata or collateral estoppel based on the Gardner-Denver line of cases. This is so because ALPA could not waive Selim's statutory rights in the CBA, Selim did not independently enter into an arbitration agreement independent of the CBA, and the CBA did not specifically prohibit legal action under Florida's statutory discrimination and whistleblower schemes. The claims were not preempted by the ADA because they are not related to airline service, nor were they preempted by the RLA because they are independent of the terms of the CBA. Therefore, we reverse the Final Summary Judgment and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED for further proceedings consistent with this opinion.
TAYLOR and HAZOURI, JJ., concur.