POLEN, J.
This appeal arises from a final summary judgment granting declaratory relief against Appellant, Maroone Chevrolet (“Maroone”), in favor of Appellee, Sun-Trust Bank (“SunTrust”), and ordering Maroone to deliver a Manufacturer’s Statement of Origin (“MSO”) to SunTrust. We reverse, holding that the trial court erred in granting summary judgment to SunTrust where the record demonstrates disputed issues of material fact as to whether entrustment of the vehicle occurred.
SunTrust filed a multi-count complaint against numerous defendants, including Maroone. Count II of the complaint sought a declaration of SunTrust’s rights concerning title to a 2001 Chevrolet Cama-ro. SunTrust’s suit arose out of an automobile transaction involving Maroone, co-defendant AutoSmart Leasing (“AutoS-mart”), and co-defendants Joseph and Brenda Ladrie (“the Ladries”).
AutoSmart and SunTrust entered into a Dealer Non-Recourse Agreement on January 11, 1999. Through that agreement, SunTrust purchases or accepts assignments of retail installment contracts from AutoSmart, which AutoSmart generates with its customers. Also under the agreement, AutoSmart warrants that it would have good title to the vehicles described in the contracts purchased by SunTrust “at the time of the making of such Contracts and of the assignment thereof to [Sun-Trust] Bank.”
In July of 2001, AutoSmart found a 2001 Chevrolet Camaro for the Ladries at Ma-roone and arranged for its future delivery to a parking lot next to a Mexican restaurant off the Turnpike and Kendall Drive. AutoSmart arranged for a purchase money loan for the Ladries from SunTrust pursuant to the Dealer Non-Recourse Agreement.
The Retail Installment Sales Contract that is the subject of the present declaratory action against Maroone and the La-dries was executed on July 13, 2001. The contract purports to memorialize a retail installment contract between AutoSmart and the Ladries for the purchase of a 2001 Camaro. It also states that, upon assignment, SunTrust is the assignee of the contract.
Joseph Ladrie dealt with Joe Dejanero, an AutoSmart employee,[1] in much of the transaction, but at no time did he deal with anybody else from AutoSmart. He also did not deal with anybody from SunTrust prior to the transaction. Ladrie testified in his deposition that he had never seen the vehicle before obtaining it. It was delivered to him at a parking lot next to a Mexican restaurant off the Turnpike and Kendall drive. Ladrie did not receive it at an AutoSmart location and had never been to an AutoSmart location. He went to Dejanero’s and he and Dejanero went to the parking lot together. The transaction in the parking lot took fifteen minutes.
Ladrie testified that the drivers who delivered the vehicle to him worked for Maroone; a Maroone driver handed the keys and owner’s manual directly to him and explained information about the car. He believed the Maroone driver handed the keys directly to him, not to Dejanero. Ladrie testified that he believed that the *620 vehicle belonged .to Maroone immediately prior to belonging to him.[2]
Ladrie testified that, at the time the vehicle was delivered to him, the Maroone employee refused =to accept the draft for payment from Dejanero[3] and, instead, told Dejanero that he had to take care of that issue with someone else:
Q:. Did, the agent of Maroone Chevrolet ever discuss payment with you?
A: No.
Q: Did he discuss it exclusively with Mr. Dejanero?
A: Mr. Dejanero discussed it with him
[[Image here]]
Q: Specifically, what did they say, everything that you could remember?
A: Mr. Dejanero had the whole file, the paperwork. I don’t know what was in • there. “I have all this stuff for you with the payment and everything.”
Q: Do you remember him specifically saying, “I have the payment for you here and everything?”
A: That’s why the guy didn’t want the check. And the guy said, “I don’t want to deal with any of that. You have to deal with somebody else.”
Q: Okay. Did he say it has to be done through our respective dealers—
[[Image here]]
A: He said the gentleman’s name that he dealt with before.
Q: The gentleman’s name at Maroone?
A: Yes.
Q: Do you know the gentleman’s name?
A: No. I am assuming it was the fleet manager. But that’s just an assumption.
Q: When the gentlemen from Maroone pulled into the parking lot, who introduced themselves to the driver first?
A: Joe [Dejanero].
Q: Do you know what he said to him?
A: No.
Q: Do you know if they recognized each other? !
Á: I don’t think they knew each other.
Dejanero provided Ladrie with a purchase agreement and retail installment contract generated by AutoSmart. Ladrie testified in his deposition that he signed a purchase agreement for the car and the retail installment contract. He initially gave a $3,000.00 down payment check to Dejanero, made out either to Dejanero or to AutoSmart — he could not recall which— a few days before taking delivery of the vehicle.
SunTrust alleged that Maroone delivered possession of the Camaro to the La-dries through AutoSmart. Maroone disputes that it ever provided the vehicle to AutoSmart.
According to SunTrust’s complaint, an entrustment as contemplated by section '672.403(2), Florida Statutes, occurred between Maroone and AutoSmart that imbued AutoSmart with the ability to pass good title to the Ladries. SunTrust alleged that, pursuant to law and the con *621 tract between SunTrust and AutoSmart, upon SunTrust’s payment to AutoSmart of the amount financed by Ladrie for the car, SunTrust was entitled to the MSO in order to secure title to the Camaro as. the secured creditor/lienor of the Ladries.
SunTrust filed a motion for partial summary judgment as to Maroone, arguing that Maroone entrusted AutoSmart with possession of the Camaro, rendering Sun-Trust’s interest in the vehicle superior to that of Maroone. After' a hearing, the court rendered an order [4] granting declaratory relief against Maroone in favor of SunTrust, and ordering Maroone to deliver the MSO to SunTrust.
We hold that the trial court erred in granting summary judgment to SunTrust where the record demonstrates disputed issues of material fact. The standard of review applicable to summary judgment is de novo. Selim v. Pan American Airways Corp., 889 So.2d 149, 153 (Fla. 4th DCA 2004). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
The sole basis for SunTrust’s summary judgment motion is that entrustment occurred according to the terms of Florida’s Uniform Commercial Code, § 672.403(2), Fla. Stat., which states: “Any entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer all rights of the entruster to a buyer in ordinary course of business.” In this case, SunTrust did not meet its burden of establishing that en-trustment occurred pursuant to- § 672.403 as a matter of law because deposition testimony demonstrates genuine issues of material fact regarding this issue.'
Maroone argues that it did not entrust the vehicle to AutoSmart' because it did not deliver the vehicle to AutoSmart and did not acquiesce to its possession or retention of the vehicle. See § 672.403(3), Fla. Stat. The term entrustment, according to section 672.403(3), Florida Statutes, “includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor’s disposition of the goods have been such as to be larcenous under the criminal law.”
First, although Ladrie testified at one instance in his deposition that he believed he was buying the vehicle from AutoS-mart, he also testified at another point in his deposition that he believed that immediately before the vehicle belonged to him it belonged to Maroone. The drivers who delivered the vehicle to him in the restaurant parking lot worked for Maroone. A Maroone employee handed Ladrie the keys and owner’s manual directly. A Ma-roone employee also explained to Ladrie the relevant information for operating the car. Finally, Ladrie testified that Dejane-ro, AutoSmart’s agent, never had physical possession of the car.
Maroone argues that a genuine issue of fact exists as to whether the Ladries constitute “persons who buy in ordinary course out of inventory,” the persons the pertinent statute ■ is designed to protect. See § 672.403, Fla. Stat. The. Uniform Commercial Code Comment to section 672.403 states, in pertinent part: “The many particular situations in which a buy *622 er in ordinary course of business from a dealer has been protected against reservation of property or other hidden interest are gathered by subsections (2)-(4) into a single principle protecting persons who buy in ordinary course out of inventory.”[5] Furthermore, the purpose of section 672.403(2) “is to place on the owner the burden of losing his property if he knowingly takes the chance of delivering it to a person in the business of dealing with goods of that kind.” Alamo Rent-a-Car, Inc. v. Williamson Cadillac Co., 613 So.2d 517, 519 (Fla. 3d DCA 1993) (emphasis added). We hold that no genuine issue of fact exists as to whether the Ladries were buyers in the ordinary course, but other genuine issues of fact exist that preclude summary judgment.
Maroone argues that it did not deliver its vehicle to AutoSmart and the vehicle was never placed in AutoSmart’s inventory or possession. Ladrie testified that it was Maroone drivers who delivered the vehicle to Ladrie in the parking lot. Ladrie never saw the vehicle in the possession of an AutoSmart agent. Moreover, Ladrie did not believe it was AutoSmart’s vehicle. As stated above, Ladrie testified in his deposition that he believed that immediately before the vehicle belonged to him it belonged to Maroone. In reviewing the record below, we hold that when this court views the facts in the light most favorable to Maroone, the nonmoving party, Maroone did not entrust the vehicle to AutoSmart.
SunTrust heavily relies on its factual contention that AutoSmart issued the temporary dealer tag, arguing, “[t]his is highly relevant and material because only the licensed dealer who is selling the vehicle can issue a temporary tag” (emphasis added). According to § 320.131(l)(k), Fla. Stat.:
In any case where a permanent license plate cannot legally be issued to an applicant and a temporary license plate is not specifically authorized under the provisions of this section, the department shall have the discretion to issue or authorize agents or Florida licensed dealers to issue temporary license plates to applicants demonstrating a need for such temporary use.
SunTrust points to Ladrie’s deposition statement in which he described what happened the day he went to pick up the car:
I was leaving work. Time was of the essence. It was raining. One of the guys went to the car for me. I went over to Joe [Dejanero]’s and he was doing my temporary tag. And he had a paragraph for Maroone. And he said, “Here, take this to — so and so.” And he said, “I am just the driver I rather you deal with somebody else.”
However, this court must view the facts in the light most favorable to Maroone and, significantly, Ladrie also testified in his deposition that AutoSmart specifically instructed him to get his temporary tag from Maroone:
Q: Did there come a time when you believed there was a problem with the transaction?
A: Yes.
Q: When was that?
A: When I called Maroone Chevrolet to get the paper tag.
Q: Why did you call Maroone Chevrolet to get it instead of AutoSmart?
A: Because that’s where AutoSmart told me to get the tag from.
*623 Q: Who from AutoSmart?
A: Joe. That’s who told me.
Q: Is that how it always happened with Joe in terms of your purchases, he would direct you to the dealerships?
A: With the [Mitsubishi] Montaro (sic), yes. With the Dodge, no.
Q: With the Dodge, how did it happen?
A: I got a paper tag from Joe and the dealer mailed me the plate, I believe.
Thus, with the Camaro at issue, Dejanero directed Ladrie to get the paper tag from the dealership, just as had happened with his previous purchase of a Mitsubishi but unlike his previous Dodge purchase, where Dejanero had given Ladrie the paper tag. Under AutoSmart’s explicit direction, Ladrie called Maroone to get the paper tag, which is when he found out Maroone was waiting to be paid for the car.[6] When this court views the facts in the light most favorable to Maroone, it was Maroone rather than AutoSmart who issued the temporary dealer tag, indicating that it was Maroone who was the licensed dealer selling the vehicle. to the Ladries. See § 320.131(l)(k), Fla. Stat.
Based on the foregoing, we hold that the trial court erred in granting summary judgment to SunTrust where deposition testimony demonstrates disputed issues of material fact as to whether entrustment of the vehicle occurred. We hereby reverse the summary judgment order and remand this case to the trial court for further proceedings in accordance with this opinion.[7] .
GUNTHER and HAZOURI, JJ., concur.

. Ladrie had purchased cars from Dejanero in the past, including a Dodge and a Mitsubishi, not all of which were done through Au-toSmart.

. Ladrie gave conflicting deposition testimony, as he also testified at another point in the deposition that he thought he was buying the car from AutoSmart.

. SunTrust’s complaint alleged that:
at the time the subject vehicle was delivered to the Ladries, Maroone Chevrolet, for some reason, refused, through their employer and agent to accept the draft for payment from AutoSmart and later AutoS-mart was unable to make good on the subject draft in order for Maroone Chevrolet to deliver the Manufacturer's Statement of Origin ("MSO”) to [SunTrust] as creditor of the Ladries and lienor of the subject vehicle.

. The order does not discuss the relevant facts except to state that there are no genuine issues of material fact.

. "Inventory” means only those chattels consisting of items commonly referred to as goods, wares, and merchandise (as well as inventory) which are held for sale or lease to customers in the ordinary course of business. § 192.001, Fla. Stat.

. After Ladrie spent a couple months trying to get a dealer tag, Dejanero explained to him that the principals of AutoSmart had left with the money SunTrust had wired into the account and there were several cases like his. Eventually, Ladrie received a tag from the DMV’s fraud division.

. Because this issue is likely to arise on remand, we note that, contrary to Maroone's second contention on appeal, section 319.22(1), Florida Statutes, would not operate to prevent the trial court or a jury from making a determination that the MSO is the property of SunTrust. The fact that SunTrust, if awarded the MSO, will be able to obtain the title pursuant to receipt of the MSO, is distinct from the trial court actually recognizing any right, title, claim, or interest of SunTrust in the vehicle unless evidenced by a certificate of title, which would have been contrary to the provisions of section 319.22(1).